## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BERNADETTE MAHR, | |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 20-3653 |
| PROJECT MANAGEMENT INSTITUTE INC., et al., | |
| *Defendants.* | |

**PAPPERT, J.**                                              **February 1, 2021**

### MEMORANDUM

      Bernadette Mahr sued Project Management Institute, Inc., Nicholas Verrekia and Lisa McCann alleging violations of the Equal Pay Act, Pennsylvania Human Relations Act and Title VII of the Civil Rights Act during her employment at PMI. Defendants move to partially dismiss the Complaint, and the Court grants their Motion in part and denies in part for the reasons that follow.

I

A

i

      Mahr worked as a Project Manager III at PMI from 2012 to January 15, 2019. (Comp. ¶¶ 1, 15–16, ECF No. 1.) During her first six years, she consistently received excellent evaluations as well as annual pay increases and bonuses. (*Id.* at ¶¶ 1, 19–20, 23.) Her trajectory at PMI changed when the company hired Verrekia as Director of the Office of Strategy Delivery in February of 2018. (*Id.* at ¶¶ 8, 15.) Mahr alleges Verrekia was intent on terminating her and after his arrival she was harassed, subject

1

to a hostile and abusive work environment, threatened and demeaned, physically intimidated and ultimately constructively discharged.  (*Id.* at ¶¶ 22, 24.)

Verrekia treated women differently from men.  (*Id.* at ¶¶ 36–37.)  He had a "propensity for using profanity" that was intended to harass women.  (*Id.* at ¶¶ 29, 35.) He "ridiculed women who contributed or . . . participated in discussions in which he was a participant and bristled when corrected by a woman."  (*Id.* at ¶¶ 99, 109.)  On one occasion he removed Styrofoam from a package, held it on his breasts in front of a glass wall in his office and "called out to all the employees sitting around his office area" while "ma[king] gestures, gyrating and wiggling."  (*Id.* at ¶ 36.)

His behavior negatively affected PMI's female employees.  He was "instrumental" in one woman's termination and "forced" another woman to transfer her position outside his supervision.  (*Id.* at ¶¶ 25–26, 34.)  That woman claimed she received positive performance reviews until Verrekia's arrival and thereafter received negative feedback.  (*Id.* at ¶ 31.)  He opened a meeting between himself and three women, including Mahr, by "repeatedly using the 'f' word" causing one woman to return the favor and give him the middle finger.  (*Id.* at ¶ 27.)  PMI fired that woman within two months of the meeting for use of foul language in the workplace while Verrekia retained his position.  (*Id.* at ¶ 28); (Compl. Exs. 5, ECF No. 1-1)[1].

Verrekia's actions also personally affected Mahr.  Once, after Mahr asked him to enter his time consistent with her Project Manager duties, Verrekia falsely claimed he was exempt from time entry, "expressed anger that a woman would ask him to do something" and told Mahr "she was to check with him before doing anything like this

---

[1]      Citations to exhibits to Mahr's Complaint reflect page numbers generated by the Court's electronic case filing system.

again." (Compl. ¶¶ 38–45.)  Three days later, he set up a meeting with Mahr during which he demonstrated anger, hostility and aggression and addressed Mahr in an intimidating fashion by thrusting his hands on his desk and pushing his face toward hers.  (*Id.* at ¶¶ 46–47(a).)  He told Mahr he "watches" women, her in particular, in meetings.  (*Id.* at ¶ 47(c)–(d).)  He also told her not to speak during department meetings, stating her comments "were not necessary and did not add any value."  (*Id.* at ¶ 47(e)–(g).)

Mahr and another woman were sufficiently offended by Verrekia's conduct that they complained to human resources.  *See* (*id.* at ¶¶ 32, 50, 70, 81).  Mahr herself complained twice to human resources and once to four PMI Vice Presidents regarding, among other things, Verrekia's harassment and discrimination.  *See* (*id.* at ¶¶ 49–50, 70, 81–82); (Compl. Exs. 63).  She alleges PMI did not properly address, investigate or resolve her complaints.  *See* (Compl. ¶¶ 50(c)–(e), 70(e), 83).  Moreover, she says she was retaliated against for telling human resources her concerns.  Shortly after both her complaints to human resources, Verrekia and McCann, a Project Delivery Manager, raised concerns about Mahr's performance, giving her a mid-year review for the first time in her six years of employment.  *See* (*id.* at ¶¶ 53–67).  They met with Mahr to to "engage in petty criticism over trivialities" where Verrekia would "yell and emit profanities."  (*Id.* at ¶ 68.)  Ultimately, they placed Mahr on a sixty-day warning period where she faced disciplinary action or dismissal if she failed to meet her performance requirements.  *See* (*id.* at ¶¶ 71–80); (Compl. Exs. 62).  Mahr did not receive her typical annual salary increase or an opportunity to participate in PMI's bonus program the year she complained.  (Compl. ¶¶ 82, 87.)

Mahr believes PMI's responses to her complaints "condoned, ratified, endorsed and encouraged the conduct of Defendants Verrekia and McCann." (*Id.* at ¶ 85.) She says because "[n]o reasonable person would remain at a workplace where repeated complaints of sex discrimination, hostile workplace, and retaliation went systematically ignored while repeated efforts to fabricate a basis for termination were generated" she was constructively discharged from the company. (*Id.* at ¶¶ 89–93.)

ii

Mahr alleges throughout her tenure at PMI she was paid less than male Project Manager IIIs "who were performing a substantially similar job and doing substantially similar activities for PMI" even though she handled more projects than them. (*Id.* at ¶¶ 2, 21, 62.) She further alleges female Project Manager IIIs in general "were paid a lesser rate of pay than male employees holding substantially similar positions" and that PMI has "consistently paid female employees less than men in comparable positions" because of their gender. (*Id.* at ¶¶ 140–42, 145.)

B

On February 26, 2019, Mahr dual-filed a charge against Defendants with the Pennsylvania Human Rights Commission and Equal Employment Opportunity Commission alleging violations of Title VII and the PHRA based on the facts above. (Compl. ¶¶ 12–13); (Compl. Exs. 2–17.) The EEOC issued Mahr a Notice of Right to Sue on July 16, 2020. (Compl. Exs. 20.) On March 3, 2020, the PHRC advised Mahr of her right to bring a lawsuit because one year had passed since she filed her charge. (*Id.* at 21.)

On July 28, 2020 Mahr filed this lawsuit alleging against PMI gender-based discrimination and sexual harassment in violation of Title VII and the PHRA (Counts I and II); retaliation against PMI in violation of Title VII (Count III) and against all Defendants in violation of the PHRA (Count IV); aiding and abetting against Verrekia and McCann in violation of the PHRA (Count V); and violation of the EPA against PMI (Count VI). *See* (Compl. 16–24). She asserts Counts I, II and VI on her own behalf as well as purportedly on behalf of similarly situated individuals. (*Id.* at ¶¶ 97, 106, 144.) She brings Counts III, IV and V only on her own behalf.

Defendants move to dismiss Counts I, II and VI pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* (Mot. to Dismiss 1, ECF No. 6). With respect to Counts I and II, they argue Mahr failed to exhaust her administrative remedies before pursuing class action claims. (*Id.* at 1, 4–5.) They also contend she has not adequately pled facts supporting her hostile work environment claims. (*Id.* at 1, 8–11.) The Defendants assert Mahr provides no factual support for her claim in Count VI but rather merely recites the elements of such a claim under the EPA. (*Id.* at 1, 5–8.)

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

5

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When a complaint includes well-pleaded factual allegations, a court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

District Courts in the Third Circuit "may grant a Rule 12(b)(6) motion on the basis of an affirmative defense '*if* the predicate establishing the defense is apparent *from the face of the complaint.*'" *Brody v. Hankin*, 145 F. App'x 768, 771 (3d Cir. 2005) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978) (emphasis in original)); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract."). A defendant bears the burdens of production and persuasion for an affirmative defense. *See Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 566 (3d Cir. 2003).

III

A

A plaintiff must exhaust administrative remedies for Title VII and PHRA

violations by timely filing administrative charges with the EEOC and PHRC and

obtaining notice of the right to sue before filing a lawsuit.  *See Mandel v. M&Q*

*Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013).  After a charge is filed, "the scope of

a resulting private civil action in the district court is defined by the scope of the EEOC

investigation which can reasonably be expected to grow out of the charge of

discrimination."  *Hicks v. ABT Assoc., Inc*, 572 F.2d 960, 966 (3d Cir. 1978) (internal

quotations and citation omitted); *see also Howze v. Jones & Laughlin Steel Corp.*, 750

F.2d 1208, 1212 (3d Cir. 1984) ("[A] district court may assume jurisdiction over

additional charges if they are reasonably within the scope of the claimant[']s original

charges and if a reasonable investigation by the EEOC would have encompassed the

new claims."); *Atkinson v. Lafayette College*, 460 F.3d 447, 454 n.6 (3d Cir. 2006)

("Claims under the PHRA are interpreted coextensively with Title VII claims.").  Thus,

"[t]he test in the Third Circuit for exhaustion of administrative remedies is 'whether

the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior

EEOC complaint, or the investigation arising therefrom.'"  *Weems v. Kehe Food*

*Distribs.*, 804 F. Supp. 2d 339, 342 (E.D. Pa. 2011) (quoting *Antol v. Perry*, 82 F.3d

1291, 1295 (3d Cir. 1996)).

Failure to exhaust is an affirmative defense.  *See Williams v. Runyon*, 130 F.3d

568, 573 (3d Cir. 1997).  Mahr's desire to bring Counts I and II "on behalf of those

7

similarly situated" establishes the predicate for this defense, which the Court may consider in deciding Defendants' Motion.  *See* (Compl. ¶¶ 97, 106).

Defendants contend Mahr has not exhausted her administrative remedies to bring a class action under Counts I and II because she "states her allegations on solely an individual basis throughout her Charge and at no time indicates that her Charge has been filed on behalf of a class of similarly situated employees."  (Mot. to Dismiss 5.) As an initial matter, Mahr does not refer to a "class" or "class action" in her Complaint. She instead alleges potential *collective* actions for Counts I, II and VI.  *See* (Compl. 16, 17, 23.)  Collective actions are different from class actions.  *See Ruehl v. Viacom, Inc.*, 500 F.3d 375, 379 n.3 (3d Cir. 2007) (noting that although courts have conflated "class action" and "collective action," they are not interchangeable).  While a plaintiff may pursue a collective action for an EPA claim, *see Finefrock v. Five Guys Operations, LLC*, 344 F. Supp. 3d 783, 788 (M.D. Pa. 2018)*,* she may not do so for hostile work environment claims.  *See, e.g.*, *Sperling v. Hoffman-La Roche, Inc.*, 24 F.3d 463, 467 (3d Cir. 1994) (Title VII is "governed by [Federal] Rule [of Civil Procedure] 23") (quoting *Sperling v. Hoffman-La Roche, Inc.*, F.R.D. 357, 361 (D.N.J. 1992)).

To the extent Mahr intends to bring the claims in Counts I and II on behalf of a class, such allegations seem at this point to be reasonably within the scope of her original charge.  *Cf. Lusardi v. Lechner*, 855 F.2d 1062, 1078 (3d Cir. 1988) ("Although the EEOC charge does not use the words 'similarly situated' or allege specifically that a class action is going to be brought . . . . [s]o long as class issues are alleged, a timely charge may serve as the basis for a class action.").  Defendants correctly point out that Mahr's charge does not state specifically that it is on behalf of a class or similarly

situated employees and that she refers to herself more than to others.  *See* (Mot. to Dismiss 5); (Defs.' Reply 3, ECF No. 8).  But the charge also contains numerous assertions about Verrekia or PMI's treatment of all women in the workplace, including:

> [Verrekia] treats women as second-class citizens, who are to be seen but not heard. . . .

> Since his hiring Respondent Verrekia has discriminated against me and other women working at PMI. . . .

> [T]here is one set of rules for men (or no rules, at all) and one set of rules for women.  This is differential treatment and evidence of sexual discrimination in Respondent PMI's workplace.  Men have no boundaries.  Women do. . . .

> Respondent Verrekia's cursing and using the "f" word is aggressive and meant to intimidate.  And his clear targets for such intimidation and ridicule repeatedly are women. . . .

> Mr. Verrekia has created a hostile and abusive work environment for women and for me. . . .

> Respondent Verrekia's discriminatory actions against me and other women have been condoned and supported and fostered at the highest levels of management within PMI. . . .

> Respondent Verrekia treats women differently than he treats men in the workplace.  He works from the premise that women should be seen and not heard.  He wishes to stifle their voices.  As a result, Respondent Verrekia bridles at any woman who gives him direction or has the audacity to speak out honestly and forthrightly.

(Compl. Exs. 5–7.)

Mahr's Complaint does not, however, comply with Local Rule of Civil Procedure 23.1, which requires her to specify she is asserting class action allegations, reference the portion(s) of Federal Rule of Civil Procedure 23 that make a lawsuit properly maintainable as a class action and allege facts justifying a class claim, including but not limited to the size and definition of the alleged class, the reason she is an adequate representative for the class and common questions of law and fact to the class. *See*

Local R. Civ. P. 23.1(a)–(b) (2017). Her purported class claims in Counts I and II of the Complaint are accordingly dismissed without prejudice. *See Ciferni v. Nooter Constr. Co.,* No. 10-6827, 2011 WL 13381483, at *1 (E.D. Pa. Mar. 23, 2011) (dismissing complaint containing class action allegations because, *inter alia*, plaintiff failed to comply with Local Rule 23.1); *Bahar v. Northwestern Human Services*, No. 06-CV-3910, 2007 WL 320256, at *7 (E.D. Pa. Jan. 30, 2007) (same). Mahr may amend her class claims, but must remember that "although [n]o minimum number of plaintiffs is required to maintain a suit as a class action,' a plaintiff in this circuit can generally satisfy [Federal] Rule [of Civil Procedure] 23(a)(1)'s numerosity requirement by establishing 'that the potential number of plaintiffs exceeds 40.'" *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467, 486 (3d Cir. 2018) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)).

B

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment[] because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, . . . Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). Such a Title VII claim is termed a hostile work environment claim. The PHRA similarly prohibits an employer from discriminating against an individual "with respect to compensation,

10

hire, tenure, terms, conditions or privileges of employment" because of her "race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability." 43 P.S. § 955(a). "The proper analysis under Title VII and the [PHRA] is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." *Huston v. P&G Paper Prods. Corp.*, 568 F.3d 100, 104 n.2 (3d Cir. 2009) (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 426 n.3 (3d Cir. 2001)).

For a plaintiff to succeed on a hostile work environment claim, she must establish that:

> (1) [she]suffered intentional discrimination because of [her] sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [her]; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability.

*Mandel*, 706 F.3d at 167. Courts look at the totality of circumstances to determine whether a work environment is sufficiently hostile, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *MacVaugh v. Cty. of Montgomery*, 301 F. Supp. 3d 458, 466 (E.D. Pa. 2018) (quoting *Harris,* 510 U.S. at 23).

Considering the totality of Mahr's allegations in the light most favorable to her, she has stated plausible claims for hostile work environment. She alleges men and women are treated differently at PMI and that she endured an abusive environment between Verrekia's hiring in February of 2018 until she left in January of 2019. During that eleven-month period, Verrekia ridiculed women who participated in discussions, bristled when women corrected him and demonstrated a "propensity for using

11

profanity" intended to harass women.  He facilitated the firing of one woman, forced the transfer of another, and prompted gender-based discrimination complaints to human resources and PMI vice presidents.  On one occasion, he publicly mocked the female body and called out to employees so his display would be seen.  On another, he set up a meeting with Mahr after becoming angry that she asked him to do something, told her he watches women and her in particular during meetings and instructed her not to speak during department meetings because her comments did not add value.  Mahr and another woman claim they received positive performance evaluations until Verrekia's arrival, after which they received negative assessments.  Mahr alleges the abuse and harassment to which she was subjected for several months caused her physical and emotional distress and that PMI management knew about Verrekia's but did nothing about it.

Verrekia's conduct may arguably not have been "severe" as courts have defined that term in this context, but as alleged it was pervasive given the relatively short period of time over which it occurred.  *See Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) ("[S]everity and pervasiveness are alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive.") (internal quotations and citation omitted); *see also Dunn v. Bucks Cty. Cmty. College*, No. 13-6726, 2014 WL 2158398, at *2 (E.D. Pa May 21, 2014) ("[T]he Third Circuit has been liberal in its treatment of 'pervasive' and 'regular,' especially in light of Rule 8(a) of the Federal Rules of Civil Procedure.") (citation omitted); *id.* (collecting cases).  All other elements of hostile work environment are sufficiently pled

at this stage.  Mahr has also stated a plausible claim of respondeat superior liability.
*See Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 105 (3d Cir. 2009)
("[A]n employer knew or should have known about workplace sexual harassment if
management-level employees had actual or constructive knowledge about the existence
of a sexually hostile environment.") (internal quotations and citation omitted)
(emphasis removed).

C

The EPA precludes an employer from discriminating "between employees on the
basis of sex by paying wages to employees . . . at a rate less than the rate at which [it]
pays wages to employees of the opposite sex . . . for equal work."  29 U.S.C. § 206(d)(1).
To assert an EPA violation, a plaintiff must allege "that employees of the opposite sex
were paid differently for performing 'equal work'—work of substantially equal skill,
effort and responsibility, under similar working conditions."  *Stanziale v.* Jargowsky,
200 F.3d 101, 107 (3d Cir. 2000) (citing *EEOC v. Del. Dept' of Health & Soc. Servs.*, 865
F.2d 1408, 1414 (3d Cir. 1989)).

Mahr alleges she received less pay than men with her same job title at her same
level and she handled more projects than her male counterparts.  Defendants argue
these allegations are "merely vague and conclusory statements" that do no more than
recite the elements of an EPA claim.  (Mot. to Dismiss 6.)  Though Mahr's allegations
are somewhat conclusory, accepting them as true at this stage barely "nudge[s them]
across the line from conceivable to plausible."  *Phillips v. Cty. of Allegheny*, 515 F.3d
224, 234 (3d Cir. 2008).  Mahr can proceed with these claims in her individual capacity,
and Defendants may renew their argument at summary judgment.

Even under a liberal reading, however, Mahr's Complaint fails to allege facts plausibly establishing a collective action for an EPA claim.  Mahr alleges other female Project Manager IIIs received less pay than men in similar positions, but she does not allege the job title(s), roles or responsibilities belonging to the men to whom she is referring.  She also vaguely alleges PMI pays women less than men in comparable positions performing equal work, but provides no specificity to bolster that claim for the Court to ascertain who she is comparing or whether her comparison is fair.  *See, e.g.*, *Endo Pharms. Inc. v. Fryer*, No. 17-2245, 2020 WL 4748296, at *3 (E.D. Pa. Aug. 14, 2020) (dismissing EPA claim because female claimant failed to describe content of her work or responsibilities and roles or responsibilities of males allegedly paid more). Courts consistently dismiss conclusory allegations that merely recite the EPA's language.  *See Muldrew v. Joseph McCormick Constr. Co.*, No. 14-27, 2014 WL 3890336, at *7 (W.D. Pa. Aug. 8, 2014) (collecting cases).  Accordingly, Count VI of Mahr's Complaint is dismissed, albeit with leave to amend, as to its collective action claims.

IV

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend a complaint] when justice so requires," which "certainly includes amendment to cure defective allegations.  *Shifflett v. Korszniak*, 934 F.3d 356, 366 (3d Cir. 2019). Mahr may amend Counts I, II and VI consistent with this Memorandum and to the extent she can allege facts sufficient to state plausible claims for relief.

14

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.